UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHELLE PROVOST, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CAPITAL ONE BANK (USA), NATIONAL ASSOCIATION,<br><br>Defendant. | Case No.: 17-8082<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff, MICHELLE PROVOST, by and through her undersigned counsel, brings this class action against Defendant, Capital One bank (USA), National Association and as and for her Complaint alleges the following upon personal knowledge as to her own acts, and upon investigation conducted by her counsel as to such other allegations herein capable of investigation to such review of publically available documents and upon information and belief as to all other matters, and hereby alleges as follows:

## INTRODUCTION

1.  Plaintiff, MICHELLE PROVOST (hereinafter referred to as "Ms. Provost" or "Plaintiff") brings this lawsuit against Defendant CAPITAL ONE BANK (USA), National Association (hereinafter referred to as "Capital One" or "Defendant") for harm to Ms. Provost caused by Capital One's unauthorized and unlawful access to Ms. Provost's consumer report from a consumer reporting agency ("CRA") in violation of, among other things, §1681b of the Fair Credit Reporting Act ("FCRA").

2.  A "consumer report" is any written, oral, or other communication of any information by a CRA bearing on a consumer's credit worthiness, credit standing, credit capacity,

character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for, among other things, credit or employment.  FCRA §1681a.

3.   The FCRA was enacted "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit ... in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information."

4.   To achieve its purpose, the FCRA places distinct obligations on three types of entities: consumer reporting agencies ("CRAs"), furnishers of information to CRAs ("Furnishers"), and users of consumer reports ("Users").

5.   CRAs collect consumer information for the purpose of creating consumer reports, which may be used by a variety of entities in making eligibility decisions affecting consumers. Most of the data that CRAs collect, including information about a consumer's credit history and payment patterns, is reported to the CRAs by third-party data furnishers.

6.   The FCRA limits activity by Users of consumer reports to certain "permissible purposes." Permissible purposes include, among others, when the user seeks the consumer report in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to the consumer. See 15 U.S.C. § 1681b.

7.   An "inquiry" is a factual record or trail of the transaction that is posted to a consumer report when a user requests access and receives a consumer report from a CRA for a consumer.

8.   There are two types of inquiries, "hard inquiries" and "soft inquiries."

9. A hard inquiry typically appears on a consumer's report when a user looks at the consumer's report as part of a review of that consumer's application for a firm offer for a credit card or other type of loan. A hard inquiry adversely affects, or lowers, a consumer's credit score. A "credit score" is a numerical value or a categorization derived from a statistical tool or modeling system used by a person who makes or arranges a loan to predict the likelihood of certain credit behaviors, including default. Higher credit scores are intended to reflect a higher level of creditworthiness.

10. A soft inquiry occurs when a consumer's credit report is viewed but has not actually applied for credit. Instead, a soft inquiry does not require consent and is commonly used, for example, as an initial screening by lenders to select pre-approved consumers for credit card and other credit promotions. Soft inquires also appear on a consumer's report but do not affect the consumer's Credit Score.

11. The Plaintiff has never applied for a loan or other form of credit from defendant Capital One nor has Ms. Provost had any dealings of any kind with Capital One.

12. Defendant Capital One never had a permissible purpose to obtain Ms. Provost's consumer report from a CRA.

13. On January 14, 2015, defendant Capital One willfully violated the FCRA by requesting and obtaining Ms. Provost's personal and confidential consumer report without having a permissible purpose and without Plaintiff's knowledge or consent.

14. Defendant Capital One's improper inquiry to Ms. Provost's consumer report was subsequently posted to her consumer report as a hard inquiry. As such, Capital One's impermissible hard inquiry to Plaintiff's consumer report has breached her right to privacy and adversely impacted Plaintiff's credit score.

15. Plaintiff brings this action to seek, on her behalf and on behalf of all other similarly situated members of the Class as defined below, actual damages, statutory damages, injunctive relief, attorneys' fees and costs, and other relief the Court deems appropriate.

16. Plaintiff's allegations are based upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

17. This Complaint alleges violations of the cited statutes in their entirety.

18. Unless otherwise stated, Plaintiff alleges that Defendant's violations were knowing and intentional, and that Defendant did not maintain procedures reasonably adapted to avoid such violations.

19. Unless otherwise indicated, the use of Defendant in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, subrogees, representatives, and insurers of Defendant.

**PARTIES**

20. Plaintiff is a natural person and at all times mentioned herein was, and continues to be, an individual residing in the County of Rockland, State of New York, within this District.

21. Plaintiff is a "consumer" as that term is defined by the FCRA, 15 U.S.C. § 1681a(c).

22. Ms. Provost is informed and believes, and thereupon alleges, that Defendant, Capital One, was at all times mentioned herein, and continues to be, a bank regularly conducting and engaging in business in the State of New York and within this District.

23. Defendant Capital One provides credit cards, auto loans, mortgages, home equity lines of credit, bank accounts and other financial products to consumers and small businesses.

Capital One maintains its headquarters at 1680 Capital One Drive, McLean, Virginia and operates as a wholly owned subsidiary of Capital One Financial Corporation, an American bank holding company specializing in credit cards, home loans, auto loans, banking and savings products, also headquartered at 1680 Capital One Drive, McLean, Virginia.

24. Defendant Capital One operates dozens of branch offices in this District including a Broadway & Chambers Branch at 277 Broadway in Manhattan, New York.

25. Plaintiff is informed and believes, and thereupon alleges, that Defendant acquired Plaintiff's credit information through an unauthorized inquiry of Plaintiff's "consumer report" as that term is defined in the FCRA, 15 U.S.C. § 1681a(d)(1).

26. Plaintiff also believes that there are many other consumers who had "hard inquiries" made by Capital One regarding their credit in New York as well as nationwide, each sufficient to satisfy the requisite numerosity.

## JURISDICTION AND VENUE

27. This Court has federal question jurisdiction over this action as the allegations arise from violations of federal law. 15 U.S.C. § 1681 *et seq.*

28. Defendant regularly does business within the State of New York and, therefore, personal jurisdiction over the Capital One exists.

29. Venue is proper pursuant to 28 U.S.C. §1391(b) in the Southern District of New York where the Plaintiff was harmed by the Defendant's wrongful and improper conduct.

## STATEMENT OF FACTS

30. At all times relevant to this complaint, Plaintiff was and continues to be an individual residing within the State of New York, in this District.

31. Plaintiff is informed and believes, and thereon alleges, that at all relevant times, Defendant has and continues to regularly conduct business in the State of New York.

32. Defendant, Capital One, is a "person" as the term is defined by the FCRA, 15 U.S.C. § 1681a(b).

33. Plaintiff has never had a business relationship with Defendant nor has Plaintiff ever incurred any financial obligation to Defendant.

34. Plaintiff has never applied for credit of any kind from Defendant.

35. Plaintiff has never applied for insurance of any kind from the Defendant.

36. Plaintiff has never provided Defendant permission to access her consumer report.

37. Plaintiff has never consented to Defendant assessing her consumer report.

38. At all times relevant to this complaint, Defendant knew that the FCRA allows access consumer reports only for the permissible uses defined at 15 U.S.C. § 1681b including, for example, "to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished . . ." 15 U.S.C. § 1681b(a)(3)(A).

39. Defendant, Capital One, knew that it never had a legitimate basis upon which to claim a permissible use under the FCRA for accessing the consumer report of the Plaintiff from a CRA.

40. On or about January 14, 2015, Defendant knowingly violated the FCRA when it made a hard inquiry and improperly accessed Ms. Provost's consumer report without having any permissible purpose.

41. Defendant's access to Ms. Provost's consumer report was outside of the scope of any permissible use set forth in 15 U.S.C. § 1681b.

42. Defendant violated 15 U.S.C. § 1681b by accessing Plaintiff's consumer report without a permissible use within the scope of 15 U.S.C. §1681b. Plaintiff suffered an invasion of her right to privacy, a legally protected interest, when Defendant accessed highly confidential personal information contained in her consumer report when Defendant had no right to access Ms. Provost's personal confidential information.

43. Plaintiff was directly impacted by Capital One's action. In or about November, 2016, Plaintiff checked her credit standing prior to applying for a motor vehicle loan by obtaining a copy of her credit report and for the she first time discovered that Defendant had made a hard inquiry and accessed her consumer report despite the fact that Plaintiff never applied for credit nor had any prior dealings with the Defendant.

44. Plaintiff was upset and adversely impacted at the discovery that her privacy had been invaded and that her personal and private information had been disclosed to Defendant, a complete stranger, who had no right to obtain, inquire, or access Plaintiff's personal and confidential information.

45. The inquiry remained on Plaintiff's credit report until at least on or about January 14, 2017.The injury that Defendant's FCRA violation caused Plaintiff to suffer is concrete because, among other things, hard inquires adversely affect consumers' credit scores. A hard inquiry by Defendant, Capital One, is reflected on the Plaintiff's consumer report. Hard inquiries remain on a consumer's file for years.

46. Upon information and belief, Defendant's FCRA violation caused Plaintiff's credit score to drop, which directly adversely affected Plaintiff's creditworthiness, possibly causing her to be unable to secure the motor vehicle loan. However, once the hard inquiry came off Plaintiff's credit report, she was able to secure a home mortgage.

47. Credit scores directly affect a consumer's likelihood of securing approval for a new loan or credit application. The lower the credit score, the less likely the consumer will find a willing lender.  Even if the consumer is close to the lender's prime-subprime or quality level cutoffs, many lenders simply don't make loans to those who fall below a particular quality level. Hence, lower credit scores can mean higher interest rates and more restrictive credit terms.

48. The impact of higher rates and more restrictive terms can be enormous.  A higher interest rate can add tens of thousands of dollars to the total cost of a mortgage or personal loan. The same principle applies to auto loans, home improvement loans, personal loans, and credit cards.  Similarly, auto insurers and homeowners insurers often charge consumers with lower Credit Scores more in premiums consumers with higher Credit Scores for an otherwise identical policy.

49. On July 20, 2017, the plaintiff made a written request to defendant to provide justification for Capital One's hard inquiry reflected on the plaintiff's credit report.  Defendant's generic written response dated August 4, 2017, provided no justification.

50. The FCRA, through 15 U.S.C. §1681b, is intended to protect consumers like Plaintiff from this precise behavior.

51. In enacting 15 U.S.C. §1681b, Congress specifically sought to protect consumers from invasions of privacy and created restrictions on access to consumers' sensitive financial information in their credit reports.

52. Moreover, the FCRA expressly provides that Congress made the following finding: "there is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality and respect for the consumer's right to privacy."  15 U.S.C. §1681a(4).

53. As such, Plaintiff is entitled to the remedies available under 15 U.S.C. §1681n and 15 U.S.C. §1681o.

54. Plaintiff and members of the Class, as defined below, are entitled to actual damages of at least $100 for each consumer, up to $1000 per consumer, for Capital One's violation. 15 U.S.C. §1681n(a)(1)(A).

## CLASS ACTION ALEGATIONS

55. Plaintiff brings this action on her own behalf, and on behalf of all others similarly situated pursuant to Fed. R. Civ. P. 23(b)(3) and Fed. R. Civ. P. 23(b)(2). Alternatively, Plaintiff requests that certification of common issues under Rule 23(b)(4) should be granted.

56. The "Class" is defined as all consumers who reside in the United States whose Equifax, TransUnion, and/or Experion consumer report reflects or reflected a hard inquiry by Capital One despite Capital One having insufficient evidence in its files to justify a permissible purpose for such hard inquiry and whose claim arose within the applicable statutory period. Defendant's employees are excluded from the Class.

57. Plaintiff does not know the exact number of members in the Class, but believes the number is in the thousands, if not more, and can be determined by discovery of the books and records of Capital One.

58. The joinder of all Class members is impractical and the disposition of their claims in the context of a class action will provide substantial benefits both to the parties and to the court.

59. Plaintiff's claims are typical of the claims of the members of the Class.

60. The questions of law and fact applicable to the Class predominate over questions which may affect individual Class members, including:

(a) whether Defendant obtained access to consumer reports from a CRA without having any permissible use for such consumer reports;

(b) how Defendant was able to access the Plaintiff's and other Class members' consumer report from a CRA without having any permissible use for such consumer reports;

(c) whether Defendant's conduct in obtaining the Plaintiff's and other Class members' consumer reports violated the FCRA;

(d) how Defendant used the Plaintiff's and other Class member's consumer reports it obtained from a CRA without having any permissible use under the FCRA;

(e) whether Defendant obtained the social security numbers of Plaintiff and the Class without authorization and in violation of the law;

(f) whether Defendant acted knowingly or recklessly in obtaining the Plaintiff's and other Class members consumer reports violation of the FCRA;

(g) the extent of damages Defendant's FCRA violations caused Plaintiff and other members of the Class; and

(h) the total number FCRA violations affecting the Class and the of proper amount of statutory damage amount for Defendant's FCRA violations.

61. Notice can be provided to all Class members through U.S. Mail or email with information provided in the consumer reports that were improperly obtained by Capital One.

62. Defendant's wrongful conduct in improperly accessing Class Member's consumer reports is generally applicable to the Class as a whole, thereby making appropriate final declaratory relief with respect to the Class as a whole.

63. This action seeks recovery only for actual, statutory and punitive damages on behalf of the Class. Plaintiff expressly does not seek recovery for personal injuries and claims related thereto.

64. Plaintiff and each member of the Class were harmed by Defendant's violations of the FCRA by, among other things, invasion of their legally protected right to privacy and to maintain the confidentiality of their personal non-public consumer report; and adverse impact posting of an improper and unauthorized hard credit inquiry in their consumer report and the adverse impact hard inquires have on a consumer's credit score and access to credit at the best possible terms.

65. The interests of class members in individually controlling the prosecution of separate claims against Defendant is small because the maximum statutory damages per violation is relatively small, $100-$1000, compared to the time, expense and cost of litigation.

66. Plaintiff has retained counsel experienced in complex large-scale class litigation and in handling claims involving consumer and other claims.

67. Plaintiff anticipates no significant difficulties in managing this action as a class action.

68. Plaintiff will fairly and adequately protect the interest of the Class.

69. A class action is a superior method for the fair and efficient adjudication of this controversy.

## FIRST CAUSE OF ACTION
## FOR VIOLATIONS OF THE FCRA

70. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

71. The foregoing acts and omissions constitute numerous and multiple violations of the FCRA by the Defendant.

72. As a result of each and every negligent violation of the FCRA by the Defendant, Plaintiff and each Class member is entitled to actual damages, pursuant to 15 U.S.C § 1681o(a)(1).

73. The hard inquiry was impermissible based on the facts that Plaintiff has never had a business relationship with Defendant, nor has Plaintiff ever incurred any financial obligation to Defendant. Plaintiff has never applied for credit of any kind from the Defendant, never consented to Defendant assessing her consumer report, never provided Defendant permission to access her consumer report, nor did Plaintiff receive any notice that Defendant was accessing her consumer credit report.

74. As a result of each and every willful violation of the FCRA, Plaintiff and each Class member is entitled to the greater of actual damages, or statutory damages not less than $100 and not more than $1,000, pursuant to 15 U.S.C § 1681n(a)(1)(A); and punitive damages pursuant to 15 U.S.C § 1681n(a)(2), as the court may allow.

## REQUESTS FOR PRESERVATION OF EVIDENCE

75. Preserve all forms of electronic data, regardless of where the data exists, without modification to or deletion of any potentially discoverable data.

76. Suspend all procedures that may alter or delete computer data.

77. Prevent deleting, overwriting, defragmenting or compressing the data.

78. Preserve all archived back-up tapes and ensure that (a) if archive tapes are rotated, the relevant tapes are removed from the rotation; (b) if backups are made to hard drives, preserve the hard drive as well.

79. Preserve the contents of all hard drives, network drives, tape drives, floppy discs, CD and DVD drives, and all other types of drives or storage media that are within the possession, custody or control of all people who have knowledge of relevant facts and those who work with them, such as assistants.

80. Preserve the contents of all information on portable computers - such as laptops, and palmtops - used by those people as well as home computers, if these are used for work purposed.

81. Preserve the contents of all data on computers that were used since the limitations period began (two years prior to filing this complaint) but that are no longer in use.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment as follows:

A. Awarding against Defendant Capital One and in favor of the Plaintiff Ms. Provost and members of the Class, the proper amount of actual damages sustained by them as a result of Defendant's violations of the FCRA;

B. Awarding against Defendant Capital One and in favor of the Plaintiff and members of the Class the proper amount of statutory and punitive damages as a result of Defendant's violations of the FCRA;

C. Directing Defendant Capital One to take all necessary actions to reform and improve its governance, internal control practices and procedures to assure Capital One's

compliance with the FCRA and other applicable laws and best practices and to protect consumers from a recurrence of the damaging conduct described herein;

    D.    Awarding to Plaintiff her reasonable attorneys' fees, costs and disbursements in the action, including accountants' and experts' fees, costs, and expenses; and

    E.    Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues so triable.

Respectfully submitted this 19th day of October 2017.

_____
Howard T. Longman, Esq.
Patrick Slyne, Esq.
**STULL, STULL & BRODY**
6 East 45th Street, 5th Floor
New York, NY 10017
Tel: 212-687-7230
Fax: 212-490-2022

**KANTROWITZ, GOLDHAMER
   & GRAIFMAN, P.C.**
Gary S. Graifman, Esq.
747 Chestnut Ridge Road
Chestnut Ridge, New York 10977
Tel:  (845) 356-2570
Fax:  (845) 356-4335

*Counsel for Plaintiff Michelle Provost*